**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **M.B.-1, M.B.-2, and K.N.**

**No. 21-0923** (Kanawha County 21-JA-33, 21-JA-34, and 21-JA-35)

**MEMORANDUM DECISION**

Petitioner Mother S.B., by counsel Joseph A. Curia III, appeals the Circuit Court of Kanawha County's October 13, 2021, order terminating her parental rights to M.B.-1, M.B.-2, and K.N.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her post-adjudicatory improvement period and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2021, the DHHR filed a child abuse and neglect petition alleging that the parents failed to provide the children with the necessary food, clothing, supervision, and housing. The DHHR alleged that a school counselor at M.B.-1 and M.B.-2's elementary school reported having major concerns about petitioner. According to the petition, the school counselor reported to a Child Protective Services ("CPS") worker that then six-year-old M.B.-1 said that petitioner threatened to commit suicide while holding a knife to her wrist recently and that petitioner had lost at least 50 pounds in the last six months. The CPS worker also spoke with then seven-year-old

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as two of the children share the same initials, we refer to them as M.B.-1 and M.B.-2, respectively, throughout this memorandum decision.

M.B.-2, who was upset and reported that the family did not have much food at home and that he was often hungry. According to the petition, M.B.-2 explained that "[petitioner] has a lot of friends that come over to the house and that [petitioner] does not work, and rather hangs out with friends and her new boyfriend." The child also reported that his father was incarcerated. The CPS worker further spoke with M.B.-1, who reported that she loved the school counselor and wished that the counselor was her mom. M.B.-1 expressed concern for petitioner and said she would love to go stay somewhere else, like her grandmother's residence. The DHHR alleged that M.B.-1 also reported to the CPS worker that petitioner had threatened suicide with a knife to her wrist on several occasions.

Next, the CPS worker visited petitioner at her home. Petitioner reported that she was unhappy that the worker was there. Petitioner denied all of the allegations about insufficient food for the children and suicide attempts. Afterwards, the worker visited with petitioner's mother, who stated that she was concerned that petitioner was abusing controlled substances again, stating that petitioner had previously abused cocaine. After visiting the family home, the worker learned that M.B.-1 and M.B.-2 had missed school the prior two days. The worker visited petitioner's home again and spoke to the children. M.B.-2 stated that they had not been to school because they had been hiding from CPS.

According to the petition, petitioner eventually agreed to participate in an in-home safety plan with the children. Petitioner had earlier refused to participate in a safety plan because the plan referenced her boyfriend and his history of drug use and incarceration. After allegedly ending her relationship with her boyfriend, petitioner agreed to participate in a safety plan. However, after CPS initiated the safety plan, the school counselor contacted CPS workers after M.B.-1 arrived at school and stated that she had a bad morning because the boyfriend punched petitioner, causing petitioner to fall off the porch and onto her brother, M.B.-2. The counselor contacted a CPS worker, who arrived at the school and interviewed both children. The children confirmed that petitioner and the boyfriend never ended their relationship and stated that they hated the boyfriend and did not want him in or near their home again. Petitioner waived her preliminary hearing, and the father of K.N. was deemed a nonabusing parent and retained custody of the child.

The circuit court held an adjudicatory hearing in March of 2021 during which petitioner stipulated to domestic violence, marijuana usage, and mental health issues impacting her ability to parent the children. The court accepted petitioner's stipulation and adjudicated her as an abusing parent. The court also granted petitioner's motion for a post-adjudicatory improvement period and ordered her to participate in parenting and adult life skills classes, supervised visitation with the children, domestic violence counseling, and drug screenings.

In October of 2021, the guardian filed a report indicating that petitioner had obtained employment and provided clean drug screens earlier in the proceedings, allowing visitation with the children to occur. However, the guardian specified in the report that petitioner began to miss scheduled domestic violence counseling and drug screens beginning in June of 2021. Further, the report indicated that petitioner tested positive for methamphetamine on three screens over the course of the summer. According to the report, petitioner contested the validity of the drug screens

and refused to seek inpatient substance abuse treatment. The guardian further explained that petitioner's visits with the children were suspended as a result of her drug abuse, and that she became noncompliant with other services as well. The report detailed that the circuit court suspended petitioner's improvement period in September of 2021 due to noncompliance. Finally, the report indicated that the DHHR informed petitioner it would recommend termination of her parental rights at the subsequent dispositional hearing, unless she would immediately enter into a rehabilitation program. The report showed that petitioner had previously began a rehabilitation program but failed to remain in the program and ceased corresponding with her case workers and providers.

Later in October of 2021, the circuit court held a dispositional hearing during which the DHHR moved for the termination of petitioner's parental rights while petitioner moved for a post-dispositional improvement period. On behalf of the DHHR, a CPS worker recommended that petitioner's parental rights be terminated. The worker testified that petitioner refused to acknowledge her substance abuse issues and failed to comply with the court's order for services. The worker explained that petitioner was ordered to participate in a rehabilitation program at a prior multidisciplinary team meeting. The worker testified that petitioner checked into a rehabilitation program but left after only one day. The worker further noted that petitioner failed to contact the DHHR after leaving the program, and that she had not participated in a drug screen since August 20, 2021, and had ceased participating in court ordered services, including parenting and adult life skills classes and domestic violence classes. Finally, the worker noted that petitioner continued to deny a substance abuse problem, despite her prior positive drug screens. Next, petitioner testified that she had cooperated with law enforcement investigations into the father, had maintained employment and housing, and that she had re-enrolled in inpatient substance abuse rehabilitation. Petitioner acknowledged that she needed assistance paying for the treatment program as her insurance would not cover rehabilitation because she averred that she did not have a substance abuse problem.

In light of the evidence at the dispositional hearings, the circuit court found that petitioner's failure to acknowledge or seek appropriate treatment for her substance abuse prevented her from being an appropriate parent. The court further found that the DHHR had made reasonable efforts to provide remedial and reunification services to petitioner; however, petitioner failed to meaningfully and consistently avail herself of services. The court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions that led to the neglect of the children in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on October 13, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

---

[2]M.B.-1 and M.B.-2's father's parental rights were also terminated below. The permanency plan for the children is legal guardianship with a relative. The father of K.N. is a nonabusing parent and the child has achieved permanency in his care.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her improvement period and, subsequently, her parental rights. According to petitioner, she "was likely to fully participate in the improvement period and an additional opportunity to complete an appropriately managed rehabilitation facility" would be a less restrictive alternative than the termination of her parental rights. Petitioner asserts that she showed significant improvement by completing her domestic violence classes and maintaining employment through a majority of the proceedings. Petitioner acknowledges that she "struggled with substance abuse," but contends that she demonstrated a willingness to get treatment by checking into a new rehabilitation facility and is being unfairly punished for her failure to complete her first rehabilitation program. We find petitioner's arguments unavailing.

Pursuant to West Virginia Code § 49-4-610(7), a circuit court shall terminate a parent's improvement period if it finds that she "has failed to fully participate in the terms of the improvement period." Here, the record is clear that petitioner failed to fully comply with the terms and conditions of her post-adjudicatory improvement period. The evidence establishes that petitioner abused controlled substances throughout the proceedings and continued to deny that she had an issue with abusing controlled substances. Further, petitioner failed to complete an inpatient drug treatment program, ceased communication with the DHHR and service providers, and stopped participating in services altogether by the end of the proceedings. This Court has previously held that it is within "the [circuit] court's discretion to terminate the improvement period before the . . . time frame has expired if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

During the proceedings, petitioner denied she had a substance abuse problem and seemed oblivious to the effects of that addiction on her ability to safely parent the children. According to petitioner, she showed a willingness to treat her substance abuse by enrolling in a new rehabilitation program at the time of the dispositional hearing. Petitioner argues that she was unsafe at her first rehabilitation facility and that she should "not have to compromise [her] physical safety to be reunified with [her] children." However, petitioner did not communicate these alleged

concerns with the DHHR or her service providers. Further, petitioner fails to address that she ceased participating in drug screens and other services several weeks before her failed stay at a rehabilitation facility. The DHHR and guardian also noted that petitioner denied that she was abusing controlled substances throughout the proceedings. This Court has held that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Ultimately, petitioner bore the responsibility of completing the goals of her family case plan, and she failed to comply with the circuit court's orders. As such, we find that the overwhelming evidence supports the circuit court's finding that petitioner failed to complete the terms of her improvement period and that termination of her improvement period was appropriate.

Moreover, based on the evidence of petitioner's sporadic compliance and her failure to abide by the circuit court's orders, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services. Importantly, this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3). On appeal, petitioner asserts that the circuit court's decision to terminate her parental rights was improper when she was making substantial progress toward reunification. However, the court's findings are based on overwhelming evidence that petitioner was never fully compliant in her improvement period and that she failed to cease abusing controlled substances, endangering her ability to properly parent the children. Moreover, the court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 13, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

5

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn